# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

01 SEP -7  PM 4: 07

... COURT
... OF ALABAMA

| | |
|---|---|
| FELICIA CLEVELAND, | ] |
| | ] |
| Plaintiff(s), | ] |
| | ] |
| vs. | ]  CV-00-N-2412-W |
| | ] |
| THE COUNTY OF TUSCALOOSA, | ] |
| ALABAMA, ET AL., | ] |
| | ] |
| Defendant(s). | ] |

**ENTERED**

SEP ( 7 2001

### Memorandum of Opinion

## I.    Introduction.

This is a federal question case. 28 U.S.C. § 1331 (2001). Plaintiff's complaint, as amended, included five counts: conspiracy, retaliation, hostile work environment, defamation, and negligent retention and supervision. On January 30, 2001, the court granted the defendants' motion to dismiss plaintiff's conspiracy claim as to all defendants. [Doc. 18.] The court also granted defendant Doster McMullen's motion to dismiss plaintiff's hostile work environment claim as to defendant McMullen in his individual capacity. [Doc. 18.] The court now has for consideration the defendants' motion for summary judgment, filed June 19, 2001. [Doc. 20.] The issues have been briefed by both parties and are now ripe for decision. Upon due consideration, the motion will be granted.

## II.     Facts.[1]

Defendant Doster McMullen ("McMullen") is the elected Tax Assessor of Tuscaloosa County, Alabama, a position that he has held since 1986. (McMullen Dep. at 6; McMullen Aff. at ¶ 1.)  Plaintiff Felicia Cleveland ("Cleveland") has been employed by defendant Tuscaloosa County in the Tax Assessor's Office since July 1992. (Cleveland Dep. at 10-11; McMullen Aff. at ¶ 11.)  Cleveland was originally employed as Clerk in the appraisal department and worked in a cubicle in the records room. (Cleveland Dep. at 14-15.) The other members of the appraisal department worked in a separate room, which was divided by cubicles. (Cleveland Dep. at 17-20.) The cubicles were divided by separators that were low enough that a person who was standing could see over them. (Cleveland Dep. at 18-19.)

The employees of the Property Tax Division of the State of Alabama Department of Revenue regularly communicate and exchange information with the county tax assessors' offices throughout the state. (Bass Decl.; McMullen Aff. at ¶ 3.)  Sometime around 1998, in order to expedite the lines of communication and reduce the amount of paperwork exchanged between the offices, Bill Bass, Director of the Property Tax Division, encouraged all of the county tax assessors to implement electronic mail systems.  (Bass Decl.; McMullen Aff. at ¶ 3; McMullen Dep. at 43.)  Because of his limited understanding of computers, McMullen relied heavily on Mike Holdefer, an Appraiser in his office who is

---

[1] The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

knowledgeable about computers, for advice and instruction concerning computers and e-mail. (Holdefer Aff. at 2; McMullen Aff. at ¶ 5; McMullen Dep. at 64.)  Like Bass, Holdefer encouraged McMullen to provide e-mail access to all employees so that they could communicate more efficiently with their counterparts at the State of Alabama Department of Revenue. (Holdefer Aff. at 1; McMullen Aff., ¶ 5.)

Bass and McMullen had numerous conversations about the advantages and disadvantages of implementing an e-mail system, in which Bass advocated providing e-mail to all employees and McMullen expressed concern about the potential misuse of the e-mail system. (Bass Decl.; McMullen Aff. at ¶ 4.)  In response to Bass' urging, McMullen agreed to provide e-mail access for a few specific positions, the Appraisers and Mappers, who regularly exchange data intensive information with the Department of Revenue. (Bass Decl.; McMullen Aff. at ¶ 3; McMullen Dep. at 35.)  McMullen, however, decided not to provide e-mail to the other positions in his office because of his concern that inappropriate material might be transmitted by e-mail. (McMullen Aff. at ¶ 4; Holdefer Aff. at 2.)  During the time they were discussing e-mail, McMullen forwarded several e-mails which he considered inappropriate to Bass and Holdefer as examples of what he feared would be sent to his employees through the e-mail system. (Bass Decl.; Holdefer Aff. at 2; McMullen Aff. at ¶ 4; McMullen Dep. at 64-65.)

Plaintiff's work required her to approach Holdefer's work area.  From June through August 1999, Plaintiff saw six e-mails that McMullen had forwarded to Holdefer when she was standing inside Holdefer's cubicle. (Cleveland Dep. at 52-53, 56-57, 64-65; Holdefer Aff. at 2.)  These e-mails included a depiction of President Clinton as male genitalia, a

3

photograph of President Clinton fully clothed with an apparent erection, a picture of Hillary Clinton with male genitalia, a cartoon of Fred Flintstone and Betty Rubble engaged in a sexual act, an audio parody of a cat food jingle, and a video parody of a Mentos commercial involving oral sex.  (Cleveland Dep. at 57-63, Def.'s Ex. 3-7 attached thereto.)  McMullen was not aware that plaintiff had seen any of the e-mails which he had forwarded to Holdefer and Bass.  (McMullen Aff. at ¶ 6; Cleveland Dep. at 68.)  Plaintiff found the e-mails offensive.  (Cleveland Dep. at 57.)  Plaintiff never said anything to McMullen about the e-mails.  (Cleveland Dep. at 68.)

It is undisputed that McMullen never sent plaintiff any e-mail that she considered to be offensive.  (Cleveland Dep. at 66-67; McMullen Aff. at ¶ 6.)  Although McMullen never sent any of the e-mails to plaintiff, plaintiff requested that Holdefer forward these e-mails to her.  (Cleveland Dep. at 54; Holdefer Aff. at 2.)  Other than the e-mails which she specifically requested from Holdefer, no one sent plaintiff any e-mails which she considered to be offensive.  (Cleveland Dep. at 55-56, 67-68.)

It is undisputed that McMullen has never said anything to plaintiff that she considered offensive, has never acted in any way toward plaintiff that plaintiff considered offensive, and has never touched plaintiff in any way that she considered offensive.  (Cleveland Dep. at 69.)  Further, it is undisputed that McMullen has never said anything negative to plaintiff concerning her complaints about seeing Holdefer's e-mail.  (Cleveland Dep. at 89.)  Other than this single complaint by plaintiff, no one has complained of any inappropriate conduct by Doster McMullen.  (Vines Aff. at 1.)

On August 19, 1999, plaintiff's attorney[2] sent a letter about the e-mails to the Probate Judge of the Tuscaloosa County that stated in part: "In an attempt to resolve this matter before it becomes a public scandal we offer to settle this matter for Two Million ($2,000,000) Dollars.  Once the EEOC charge is filed, our ability to control any private resolution of this sad situation will be virtually nonexistent."  (Cleveland Dep. at 75-76, Def. Ex 8 attached thereto.)  After the County did not accept her $2 million offer, plaintiff's attorney arranged for plaintiff to be interviewed by Channel 6 television news during which she discussed the e-mails and her the $2 million demand.  (Cleveland Dep. at 82-83.)  McMullen was also interviewed as part of the same news report and, according to plaintiff's recollection, stated that he thought Cleveland's suit was just an attempt to extort money, there was no basis for it, and that he sent e-mails to prove why the office did not need e-mail.  (Cleveland Dep. at 85-86.)

Personnel policies for Tuscaloosa County employees are established by the Tuscaloosa County Commission and the Tuscaloosa County Civil Service Board.  (Vines Aff. at 1.)  The Tuscaloosa County Civil Service Act provides that the employment of all county employees, with limited exceptions, shall be governed by policies promulgated by the Civil Service Board.  (McMullen Aff. at Ex. A, Section 2.)  Melvin Vines is the Personnel Director of Tuscaloosa County and is responsible for administering the county's personnel policies, including equal employment opportunity and sexual harassment.  (Vines Aff. at 1; McMullen Aff. at ¶ 8.)  Throughout her tenure with the county, plaintiff has been employed under the Tuscaloosa County Civil Service System.  (Cleveland Dep. at 22; McMullen Aff.

---

[2]  Plaintiff's attorney at the time is not her current counsel of record.

at ¶ 2.)

The Civil Service Board's policy on promotions requires that vacancies be posted
for application by interested employees. (McMullen Aff. at Ex. B, pp. 17-18.) The Board
then provides "the Department Head with the three most senior applicants providing they
are deemed by the Board to be reasonably qualified for the position." (McMullen Aff. at
Exhibit B, pp. 17-18.) Tuscaloosa County's handbook states the policy for awarding
positions is as follows:

> In selecting persons to fill vacancies or new jobs, the following factors shall
> determine who is assigned such positions:
> a)   ability to do the job;
> b)   physical fitness to perform the job;
> c)   seniority;
>      Where factors (a) and (b) are relatively equal, seniority shall govern.

(McMullen Dep. at 174.)  Civil Service Board Rules emphasize a strong preference for
promotion based on seniority, and require special written justification and review by the
Civil Service Board if a promotion is not awarded to the most senior employee who seeks
the promotion. (McMullen Aff. Ex. B at 17-18). It is undisputed that in his 15 years as Tax
Assessor, McMullen has only once awarded a promotion to someone other than the most
senior applicant. (McMullen Aff. at ¶ 10; McMullen Dep. at 171.) In this single exception,
the person selected had specialized technical knowledge required for a unique position,
which the more senior applicant did not possess. (McMullen Aff. at ¶ 10; McMullen Dep.
at 171-172.)

In June 1999, plaintiff bid on the position of Assessing Clerk and was awarded the
position based upon her seniority. (McMullen Aff. at ¶ 11.) At the time she was awarded

6

the position, McMullen informed plaintiff that she would receive the associated raise immediately, but asked that she continue performing her old job responsibilities until the end of the appraisal season so that Cleveland could finish her work and train her replacement, Curley Travis. (Cleveland Dep. at 25, 29, 31-32; McMullen Dep. at 182-83; McMullen Aff. at ¶ 11.) At the end of the appraisal season (which concludes at the end of September), plaintiff assumed the position of Assessing Clerk and was moved to the office in which all of the Assessing Clerks work. (Cleveland Dep. at 25-26, 28, 32-33; McMullen Aff. at ¶ 11.)

On August 30, 2000, Cleveland filed the present lawsuit. (Complaint.) In February 2001, plaintiff bid on a Mapping Clerk position. (Cleveland Dep. at 35; McMullen Aff. at ¶ 12.) The Mapping Clerk position was awarded to Claudine Evans based upon her seniority. (Cleveland Dep. at 36-37; McMullen Aff. at ¶ 12.) Ms. Evans had been employed in the office for 22 years, while plaintiff had been employed for less than 9 years at the time. (McMullen Aff. at ¶¶ 11, 12.) It is undisputed that Ms. Evans had the ability to perform the functions of the Mapping Clerk position. (Cleveland Dep. at 109-10.)

In April 2001, plaintiff bid on a Clerk II position, which was similar to her original position as Clerk. (Cleveland Dep. at 35; McMullen Aff. at ¶ 12.) The Clerk II position was awarded to Betty Holt, who had not filed a lawsuit, based upon her seniority and ability to do the job. Cleveland Dep. at 36-37; McMullen Aff. at ¶ 12.) Ms. Holt had been employed in the office for more than 12 years, while plaintiff had been employed for less than nine years at the time. (McMullen Aff. at ¶¶ 11, 12.) It is undisputed that both Holt and Cleveland had the ability to perform the functions of the Clerk II position. (Cleveland Dep. at 110;

7

McMullen Dep. at 164-66.)

## III.    Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movants can meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movants is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV. Discussion.

### A. Defamation and Negligent Retention and Supervision.

In her response to defendant's Motion for Summary Judgment, Cleveland requests the court dismiss her claims of defamation and negligent retention and supervision with prejudice. Summary judgment will therefor be granted as to counts 3 and 5.

### B. Sexual Harassment-Hostile Work Environment.

Cleveland's hostile work environment claim is based upon the defendants' alleged violation of Title VII and Cleveland's right to equal protection as guaranteed by the Fourteenth Amendment and protected by 42 U.S.C. § 1983. *See* U.S. Const. amend. XIV; 42 U.S.C. §§ 1983, 2000e (2001). The Eleventh Circuit has noted that when, as in this case, §

9

1983 is used as a parallel remedy for a violation of § 2000e-2, "'the elements of the two causes of action are the same.'" *See Cross v. Alabama*, 49 F.3d 1490, 1507-08 (11th Cir. 1995) (*quoting Hardin v. Stynchcomb*, 691 F.2d 1364, 1369 n.16 (11th Cir. 1982)).  Thus, the Court analyzes both grounds of the plaintiff's hostile work environment claim simultaneously.

In *Gupta v. Fla. Bd. of Regents*, the Eleventh Circuit stated the elements of a prima facie case of hostile work environment based on sexual harassment.  A plaintiff must establish:

> (1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.

*Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 582 (11th Cir. 2000), *cert. denied*, 531 U.S. 1076 (2001) (*citing Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 2000)).  In the instant case, the defendants argue that Cleveland's hostile environment claim fails under the third and fourth elements of the prima facie case.  According to the defendants, any harassment to which Cleveland was subjected was not based on her sex and was not sufficiently severe or pervasive to constitute sexual harassment.

Regarding the necessity that sex harassment be based upon the gender of the harassed employee, the Supreme Court, in *Oncale v. Sundowner Offshore Services, Inc.*, stated:

10

Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at "*discriminat[ion]* ... because of ... sex." "We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations. "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed."

*Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80-81 (1998) (alterations in original) (citations omitted). The Eleventh Circuit has noted that "[r]egardless of the factual context, our analysis focuses only on whether the complaining employee was targeted because of his or her gender." *Succar v. Dade County School Board*, 229 F.3d 1343, 1344 (11th Cir. 2000). Other circuits have also noted the importance that harassment be based on the gender of the employee in order to constitute sexual harassment. *See Berry v. Delta Airlines, Inc.*, 2001 WL 910781, *5 (7th Cir. 2001) (upholding summary judgment against plaintiff on hostile environment claim because harassing acts "were not motivated by any anti-female animus"); *Brown v. Henderson*, 257 F.3d 246, 254 (2nd Cir. 2001) ("[I]n the absence of evidence suggesting that a plaintiff's sex was relevant, the fact that both male and female employees are treated similarly, if badly, does give rise to the inference that their mistreatment shared a common cause that was unrelated to their sex. ... And this inference is not necessarily eliminated even if some of the harassment has sexual content."); *Bowman v. Shawnee State University*, 220 F.3d 456 (6th Cir. 2000) ("Non-sexual conduct may be illegally sex-based and properly considered in a hostile environment analysis where it can be shown that but for the employee's sex, he would not have been the object of harassment."); *Holman v. Indiana*, 211 F.3d 399 (7th Cir. 2000) ("[W]e have noted

11

that because Title VII is premised on eliminating *discrimination*, inappropriate conduct that is inflicted on both sexes or is inflicted regardless of sex, is outside the statute's ambit."); *Stahl v. Sun Microsystems, Inc.*, 19 F.3d 533, 538 (10th Cir. 1994) ("If the nature of an employee's environment, however unpleasant, is not due to her gender, she has not been the victim of sex discrimination as a result of that environment.").

As to the fourth element of the prima facie case of hostile work environment, the Eleventh Circuit has noted that "[t]he fourth element--that the conduct complained of was 'sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment'--is the element that tests the mettle of most ... harassment claims." *See Gupta*, 212 F.3d at 583. Proof of this element "ensures that Title VII does not become a mere 'general civility code.'" *Id.* (*citing Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). In order to establish that the harassment to which a plaintiff was subjected was unlawful, a plaintiff must show that "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' ... that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (*quoting Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)).

To make such a showing, the Eleventh Circuit has required that a plaintiff demonstrate that her work environment was one that "'a reasonable person would find hostile or abusive' and that 'the victim ... subjectively perceive[s] ... to be abusive.'" *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999) (*quoting Harris*, 510 U.S. at 21) (alteration in original). In reviewing whether a reasonable person would find the plaintiff's

12

workplace sufficiently hostile or abusive to warrant a claim of harassment, the Eleventh

Circuit has said:

> The objective component of this analysis is somewhat fact intensive. Nevertheless, the Supreme Court and this Court have identified the following four factors that should be considered in determining whether harassment objectively altered an employee's terms or conditions of employment: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance.

*Id.* (citations omitted). Thus, this court is called on to "examine the conduct in context, not

as isolated acts, and determine under the totality of the circumstances whether the

harassing conduct is sufficiently severe or pervasive to alter the terms or conditions of the

plaintiff's employment and create a hostile or abusive working environment." *Id.* (citations

omitted).

Turning to the evidentiary record, it is clear that plaintiff's hostile work environment

claim fails as a matter of law. The alleged harassment at issue was not targeted at

Cleveland because of her gender. Neither party has cited, nor has this Court located, a

case involving a hostile environment claim based on the types of e-mails that plaintiff

witnessed. The e-mails were not pornographic in the typical sense, in that three of the e-

mails could be construed as political jokes, while the other three could be considered

attempts, on some level, at humor. Although the Court finds that all six e-mails were

appalling and completely out of place in a work environment, the plaintiff has failed to show

how a female would be more offended than a male by these e-mails. Quite simply, a male

could find the offending e-mails just as disgusting and improper as Cleveland did. Thus,

13

Cleveland has failed to demonstrate that she was discriminated against on the basis of her status as a female and her hostile work environment claim fails.

Even if she could prove that the defendants harassed her on the basis of her gender, however, the incidents of which Cleveland complains do not rise to the level of severity and pervasiveness necessary to warrant protection under Title VII or the Fourteenth Amendment. Not only does the plaintiff fail to prove that her workplace was objectively hostile, recent cases from the Eleventh Circuit indicate the level of harassment that must be present in the workplace in order for an employee to seek recourse.

As noted above, in order to determine if the plaintiff's work environment was hostile, this Court must review the following factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. The plaintiff was employed by Tuscaloosa County for over nine years. The conduct of which she complains, six incidents, all occurred within a few month's time. As for the severity of the conduct, although the Court recognizes that the e-mails that the plaintiff witnessed are utterly disgusting and devoid of any taste, the Court also recognizes that the e-mails were not directed at the plaintiff, were not sent to her computer (except by her own request), and were not presented to her in any other way. By her own admission, the only reason that plaintiff saw the offensive images was because she was standing in a co-worker's cubicle as he opened e-mail that had been sent to him, not to her. Moreover, there is no evidence that the conduct of which the plaintiff complains either threatened the plaintiff or humiliated her. Finally, whether the conduct unreasonably

14

interfered with the plaintiff's job performance was addressed in her deposition as follows:

Q. You saw these emails that we've been talking about today, you were at Mike Holdefer's desk?

A. Correct.

Q. Would you generally walk away when these things came up?

A. Yes.

Q. Did they prevent you from performing your work?

A. No.

Q. Did they interfere with your work?

A. To some degree.

Q. How?

A. Just imagine that your boss is sending those type emails within the workplace.

Q. In what way did it interfere with your work? Were you able to do your job?

A. I was able to still do my job.

(Cleveland Dep. at 98.) Plaintiff has failed to put forward any evidence from which this Court could conclude that the complained of conduct unreasonably interfered with her job performance.

Two recent Eleventh Circuit opinions further demonstrate that the plaintiff has failed to allege conduct that is sufficiently severe and pervasive. In *Mendoza v. Borden*, 195 F.3d 1238 (11th Cir. 1999), the Court found that the following actions did not amount to severe and pervasive harassment: the plaintiff's supervisor constantly watched her, followed her around, and looked her up and down; on two occasions when he was looking her up and down, the supervisor stared at the plaintiff's groin and made sniffing motions; he rubbed his right hip against the plaintiff's left hip while touching her shoulder and smiling; finally, the

15

supervisor told the plaintiff on one occasion that he was "getting fired up." *See Mendoza*, 195 F.3d at 1243-44. In *Gupta v. Fla. Bd. of Regents*, the Eleventh Circuit found that the following conduct, all of which occurred over a period of six or seven months, was not severe and pervasive: the alleged harasser looked the plaintiff up and down; he suggested that they have lunch at a Hooters restaurant; he frequently called her at home in the evenings, asking her if she was in bed or where her boyfriend was; he asked her to lunch on several occasions; he told her that some of the other faculty with whom she ate lunch were racist and evil; he put his hand on her right thigh, partially on the inside of her leg; he lifted the hem of her dress about four inches; he touched a bracelet she was wearing and told her that it was very nice; he touched a ring she was wearing; in her presence, he unbuckled his belt and unzipped his pants in order to tuck in his shirt; he told her that she was beautiful; in reference to the promiscuity of western culture, he told her that she was "innocent and ... [did not] have much experience"; on the morning following a bad thunderstorm he asked her why she did not call him and invite him to spend the night; finally, he explained to the plaintiff that men are superior to women, that women are like meat, and that "men need variety in women." *See Gupta*, 212 F.3d at 578-79. In light of *Mendoza* and *Gupta*, there is simply no way that the six incidents upon which the plaintiff rests her harassment claim rise to the level of severe and pervasive.

Because the plaintiff has both failed to show that the harassing conduct of which she complains was based upon her gender and failed to demonstrate that such conduct was so severe and pervasive that the terms and conditions of her employment were altered, the defendants' motion for summary judgment will be granted as to plaintiff's claim of sex

16

harassment based on a hostile work environment.  The court therefor does not reach the question of whether defendant Tuscaloosa County can be liable under 42 U.S.C. §1983 for the actions of defendant Doster McMullen.

### C.    Retaliation.

Cleveland complains that the defendants retaliated against her for filing this lawsuit by moving her into an open work area and failing to promote her on two occasions.[3] Cleveland's retaliation claim is based upon the defendants' alleged violation of Title VII and Cleveland's right to free speech as guaranteed by the first amendment and protected by 42 U.S.C. § 1983. *See* U.S. Const. amend. I; 42 U.S.C. §§ 1983, 2000e (2001).  Unlike hostile work environment claims, where liability under Title VII and § 1983 can be analyzed simultaneously, retaliation claims premised on Title VII must be analyzed separately from such claims based on the first amendment and brought under § 1983. *Compare Gupta*, 212 F.3d at 582, *with Stanley v. Dalton*, 219 F.3d 1280, 1288 (11th Cir. 2000).

### 1.    Title VII.

To state a prima facie case of retaliation under Title VII, Cleveland must show that: (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression. *See Gupta*, 212 F.3d at 587.  Because the defendants do not dispute that the

---

[3] The following time line, relevant to the plaintiff's retaliation claim, is gleaned from the parties' various submissions:  In June 1999, plaintiff bid on and was awarded the position of Assessment Clerk, though she agreed to continue her old job until the end of September 1999.  Doster McMullen sent the e-mails that form the basis of this lawsuit between June 1999 and August 1999.  On August 19, 1999, Plaintiff sent a letter to the Tuscaloosa County Probate Judge complaining of the e-mails.  As agreed in June, Plaintiff assumed the position of Assessment Clerk at the end of September 1999, moving to the work area where all of the other Assessment Clerks worked.  In August 2000, plaintiff filed the present lawsuit.  In February and April 2001, plaintiff bid on two civil service positions, neither of which she was awarded.

plaintiff engaged in statutorily protected expression when complaining of the e-mails to the probate judge and filing the present lawsuit, the court examines the latter two elements of the prima facie case.

According to the Eleventh Circuit, "An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Id.* The plaintiff cites the following incidents as adverse employment actions: after she was promoted to the position of Assessing Clerk, she was moved into the workspace occupied by Assessing Clerks; and she was denied a promotion on two occasions in favor of more senior employees, one of whom had less experience than plaintiff in performing the particular tasks of the job to which the employee was promoted.

Regarding the defendants' decision to move Cleveland into the area where the Assessing Clerks worked and away from her more enclosed workspace, the evidence presented to this court demonstrates that Cleveland was moved to that work area because of her promotion to the position of Assessing Clerk, a promotion for which she bid. In her brief, Cleveland has not challenged the reason for, or timing of, the decision to move her to the Assessing Clerks area. The only evidence before this court establishes that she asked for and received this promotion and knew, well in advance of her letter to the probate judge, that she was going to become an Assessing Clerk at the end of September 1999. She cannot now complain that she was, in fact, made an Assessing Clerk at the end of September 1999 and transferred to the area in which the Assessing Clerks work. However,

18

as for her claims that the defendants retaliated against her by passing her over twice for promotions that she sought, the court must examine the third element of the prima facie case because denials of promotion can be considered adverse employment actions. *See Standard v. A.B.E.L. Serv., Inc.*, 161 F.3d 1318 (11th Cir. 1998).

The third element of the prima facie case requires the plaintiff to demonstrate that the adverse action complained of was causally related to the protected expression. "To establish a causal connection, a plaintiff must show that 'the decision-maker[s] [were] aware of the protected conduct,' and 'that the protected activity and the adverse action were not wholly unrelated.'" *Gupta*, 212 F.3d at 590 (*quoting Farley v. Nationwide Mut. Ins.*, 197 F.3d 1322, 1337 (11th Cir. 1997)).

Whether or not it can be shown that the individual responsible for deciding to promote other employees rather than Cleveland knew about Cleveland's lawsuit, it is clear that she has not produced any evidence that her filing of this lawsuit and the decision to deny promotions to her is causally connected. The only evidence the plaintiff has pointed to as support for a causal connection is that she "filed this action in August 2000, [and] the Defendant passed the Plaintiff over for promotions in February and April 2001, less than one year after engaging in the protected activity." (Pl.'s Br. at 25.) In *Wascura v. South Miami*, 257 F.3d 1238 (11th Cir. 2001), the Eleventh Circuit stated that "[w]hile a close temporal proximity between two events may support a finding of a causal connection between those two events," a time span of three and a half months between the two events, standing alone, does not suffice to show a causal connection between the two events. *See Wascura*, 257 F.3d at 1244-45. Because plaintiff has failed to show any connection between the filing of

19

her complaint and the subsequent decisions to not promote her other than the six and eight months that separated them, she has failed to establish a prima facie case of retaliation under Title VII.

Even if the plaintiff could demonstrate a prima facie case of retaliation under Title VII, however, her claim would still fail because she has failed to rebut the proffered, non-discriminatory reasons advanced by the defendants for the employment actions of which she complains. According to the Eleventh Circuit, "[o]nce the plaintiff makes out a prima facie case, the burden shifts to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action. If the defendant offers legitimate reasons, the presumption of retaliation disappears. The plaintiff must then show that the employer's proffered reasons for taking the adverse action were actually a pretext for prohibited retaliatory conduct." *Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999) (internal quotation marks and citations omitted).

In the present case, the defendants have put forward legitimate reasons for the actions of which the plaintiff complains, and the plaintiff has failed to rebut these reasons. In regard to the decision to relocate the plaintiff's workspace to a more open area, the defendants have submitted evidence that the plaintiff was moved when she became an Assessing Clerk to the area at which the Assessing Clerks work. In her brief, plaintiff failed to respond to this proffered, legitimate reason for her workspace relocation.

The defendants likewise proffered evidence that their decisions to promote other individuals rather than the plaintiff were based on legitimate factors rather than a retaliatory motive. Both parties admit that the county promotion policy requires the defendants to

examine applicants in terms of their ability to do the job, their physical fitness to perform the job, and, when those are relatively equal, each applicant's seniority. The defendants have produced uncontroverted evidence that Civil Service Board Rules emphasize a strong preference for promotion based on seniority, and require special written justification and review by the Civil Service Board if a promotion is not awarded to the most senior employee who seeks the promotion. The defendants assert that, based on the criteria set forth above, the plaintiff was not promoted in either of the cases of which she complains because the individuals who were promoted had the ability to do the jobs sought and were more senior than the plaintiff. Defendants further assert, and it is undisputed, that McMullen has always promoted based upon seniority, except in one case in which a job position required specialized, technical knowledge, which the more senior applicant did not possess. The plaintiff's only response to defendant's proffered reason is that she was the superior applicant because she had more experience than the other applicant at performing the particular tasks required of the job for which they were applying.[4]  The plaintiff's experience, however, does not prove that she was the superior candidate. While McMullen admitted in his deposition that experience is taken into account in assessing ability, there is no evidence that experience is the only component of ability. In the absence of any other evidence that the defendants did not apply the same decision-making process in the

---

[4]In her brief in response to defendants' motion for summary judgment, plaintiff raises the issue of mendacity in an attempt to persuade the court that because defendant McMullen's explanation of why he sent the e-mails at issue in the lawsuit seems suspicious to the plaintiff, the defendants' proffered reasons for not promoting the plaintiff should be rejected. The court declines to accept plaintiff's contention that defendant McMullen is lying about why he sent the e-mails. Moreover, the court fails to understand the connection between an allegedly suspicious explanation for why the e-mails at issue were sent and the defendants' proffered non-discriminatory reasons for not promoting the plaintiff.

21

complained of cases as they did in all other cases, this court finds that there is simply no

genuine issue of material fact that a jury should be called upon to decide.

## 2.   § 1983 – First Amendment.

As for the other basis of the retaliation claim, neither party in its briefs has addressed

whether the first amendment can serve as a ground upon which Cleveland can seek relief

for the alleged retaliation of which she complains.[5]  Nevertheless, the parties have

presented sufficient evidence from which this court can render a decision on the merits of

such a claim.

The Eleventh Circuit has articulated a four-part test that courts are to utilize when

examining first amendment claims brought under 42 U.S.C. § 1983:

[T]he employee must show by a preponderance of the evidence that: (1) the
employee's speech is on a matter of public concern; (2) the employee's first
amendment interest in engaging in the speech outweighs the employer's
interest in prohibiting the speech in order to promote the efficiency of the
public services it performs through its employees; and (3) the employee's
speech played a "substantial part" in the employer's decision to demote or
discharge the employee.   If the employee succeeds in showing the
preceding factors, the employer must prove by a preponderance of the
evidence that (4) "it would have reached the same decision ... even in the
absence of the protected conduct."

*Stanley v. Dalton*, 219 F.3d 1280, 1288 (11th Cir. 2000) (citation omitted).  The court finds that

the third prong of this test has not been met by the plaintiff because she has presented no

evidence that her speech played a substantial part in the defendants' allegedly retaliatory

acts.  As a result, the court does not address the first, second, or fourth prongs.

---

[5] In her response to defendants' motion for summary judgment, plaintiff cited several cases that discussed
the first amendment in the context of retaliation.  Neither party, however, actually addressed the first amendment
grounds of plaintiff's retaliation claim.

The burden upon the plaintiff to demonstrate that her speech played a substantial role in the challenged decisions of her employer has been characterized as light. *See Stanley*, 219 F.3d at 1291. The Eleventh Circuit has stated that "[i]t is neither possible nor desirable to fashion a single standard for determining when an employee has met her initial burden of demonstrating that a retaliatory intent was a 'substantial' or 'motivating factor' behind a government employment decision." *See Beckwith v. Daytona Beach Shores*, 58 F.3d 1554, 1564 (11th Cir. 1995). This court is called on to "examine the record as a whole to ascertain whether [the plaintiff] presented sufficient evidence for a reasonable jury to conclude that [her] protected speech was a 'substantial' motivating factor in the decision to terminate [her]." *Stanley*, 219 F.3d at 1288.

Examining the record as a whole, it is clear that the plaintiff has not presented sufficient evidence from which a reasonable jury could conclude that her speech played a substantial role in the decision to move her to a different work area and award the promotions she sought to other employees. As for the decision to move Cleveland into an open area, the only evidence presented to this court, as noted above, is that Cleveland was moved to the work area in which all of the Assessing Clerks worked because she had been awarded the position of Assessing Clerk based on her bid for that promotion. Cleveland has simply not challenged the reason for, or timing of, the decision to move her to the Assessing Clerks area in her brief. The only evidence before this court establishes that she asked for and received this promotion and knew, well in advance of her letter to the probate judge, that she was going to become an Assessing Clerk at the end of September 1999. She cannot now complain that she was, in fact, made an Assessing Clerk at the end of

23

September 1999 and transferred to the area in which the Assessing Clerks work.

As for the decisions to promote two other people into jobs for which the plaintiff had bid, the plaintiff again has failed to put forth sufficient evidence that her speech, in this case her filing the present lawsuit, was a substantial motivating factor in the challenged decisions. Although, as noted above, the burden on the plaintiff is light, there is a burden nonetheless. In *Stanley v. Dalton*, the Eleventh Circuit gave examples of how this burden has been carried in previous cases, noting several factors that the court has reviewed as part of its analysis:

In conducting this examination in the past, we considered several factors as relevant. We concluded that "[w]here termination closely follows protected activity, it is usually reasonable to infer that the activity was the cause of the adverse employment decision." We also examined whether any other asserted reasons for the termination were shown to be pretextual. Further, we examined any comments made, or actions taken, by the employer indicating that the discharge was related to the protected speech. We also looked to whether the asserted reason for the discharge varied. Finally, we considered circumstantial evidence of causation including such facts as who initiated any internal investigations or termination proceedings, whether there was any evidence of management hostility to the speech in question, or whether the employer had a motive to retaliate. There is no one factor that is outcome determinative, but all factors must be taken into account.

*Stanley*, 219 F.3d at 1291n.20 (citations omitted). After citing these factors, the court then labeled the following circumstances a "close call":

Stanley's evidence shows that Chadwick confronted Stanley about his statements to the GBI and challenged the basis for Stanley's suspicions. When Chadwick became Chief, he transferred Stanley without asking his preference of assignments as he did others. Chadwick also failed to follow departmental policy in advertising an available promotion and promoted another employee even though Stanley was eligible for consideration for the promotion. In 1994, Chadwick ordered an investigation of the "buy fund" and reprimanded Stanley even after he passed a polygraph test. Tellingly, Chadwick also asked Stanley how it felt "to be put under the microscope of

24

suspicion." In 1997, Chadwick reprimanded only Stanley and not Cooper even though the internal investigation faulted both of them. Chadwick then discharged Stanley after the Coker incident. Although a close call, we conclude that Stanley presented sufficient evidence to create a jury question on causation.

*Id.* at 1292.

In the present case, the plaintiff has not alleged conduct that even approaches the level of evidence that the Eleventh Circuit termed a "close call" in *Stanley*. The only evidence that plaintiff has put forward to prove that the filing of the present lawsuit motivated the defendants to not promote her is that she had more experience in performing the responsibilities of one of the jobs to which another individual was promoted instead of her. While plaintiff claims that her experience made her the "superior candidate," it is uncontroverted that experience was not the only consideration in assessing the abilities of the candidates. The fact that plaintiff may have had more experience performing the tasks required of the job she sought does not prove that she was the more able of the candidates. Further undercutting and minimizing her reliance on experience is the uncontroverted statement of defendant McMullen that most of the positions in the Tax Assessor's office require similar skill and ability.   The evidence presented by the plaintiff simply does not prove that she was the deserving candidate. Instead, it shows that the defendants followed a policy of awarding promotions to senior employees who had the ability to do the job.

Because the plaintiff has not demonstrated that there is a genuine issue of material fact as to her retaliation claim under either the first amendment or Title VII, summary judgment will be granted in favor of the defendants on this count.

## V.    Conclusion.

The court concludes that there is no genuine issue of material fact as to any claim of the plaintiff and that the defendants are entitled to judgment as a matter of law. Summary judgement will therefor be granted in favor of the defendants. The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this _____ of September, 2001.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE

26